IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. L-06-2304 |
| | * | |
| ROBERT M. HOYT, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

*************

## **MEMORANDUM**

This is a civil action in which the United States seeks to reduce to judgment federal tax assessments against Robert M. Hoyt and to void allegedly fraudulent transfers of property and money from Mr. Hoyt to his wife, Sandra S. Hoyt. Specifically, the United States alleges in Count I of the Amended Complaint that Mr. Hoyt owes $417,836.17 in unpaid tax assessments. In Counts II through IV of the Amended Complaint, the government alleges that Mr. Hoyt transferred to his wife his interest in their jointly owned properties and funds in the amount of $70,000 for insufficient consideration at a time when he was indebted to the United States for these unpaid assessments. The government claims that these transfers rendered Mr. Hoyt insolvent and were effected to prevent the government from collecting the unpaid taxes.

The Hoyts moved to dismiss Counts II through IV, contending that the government's fraudulent conveyance claims are time-barred and that property held by tenants-by-the-entirety is beyond the reach of judgment creditors. For the reasons that follow, the Court will, by separate order, deny the Hoyts' Motion to Dismiss Counts II through IV of the Amended Complaint.

**I.     BACKGROUND**

On September 6, 1996, the Commissioner of Internal Revenue assessed trust fund recovery penalties and interest against Mr. Hoyt in the amount of $156,279.34.[1] On August 11, 1997, a second tax assessment for $60,378.47 issued against Mr. Hoyt. The IRS filed notices of federal tax liens with the Circuit Court for Montgomery County, Maryland for each tax assessments on June 11, 1997 and March 31, 1998, respectively.

On March 20, 1998, Mr. Hoyt transferred $70,000 to his wife for little or no consideration. On January 21, 1999, Mr. Hoyt transferred his interest in real properties located in Bethesda, Maryland and Edgewater, Maryland to his wife. Prior to these transfers, both properties had been jointly held as tenants-by-the-entirety by the Hoyts. As a result, after the January 21, 1999 transfers, Mrs. Hoyt was the sole owner of these properties. According to the government, Mr. Hoyt's transfers of the $70,000 and the real properties rendered him insolvent.

Mrs. Hoyt subsequently transferred both the Bethesda property and the Edgewater property. Approximately two weeks after Mr. Hoyt transferred his real property interests to her, Mrs. Hoyt transferred her interest in the Edgewater property to The Sandra S. Hoyt Qualified Personal Residence Trust U/A (the "QPRT") for no consideration.[2] The interest transferred to the QPRT included the property interest that Mr. Hoyt had

---

[1] In evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded allegations of fact and view them in the light most favorable to the plaintiff. See Jenkins v. McKeithen, 395 U.S. 411, 421-22 (1969). Accordingly, the facts recited herein are drawn from the Amended Complaint.

[2] Because of this transfer, Mrs. Hoyt is named in the Amended Complaint as a defendant in the instant lawsuit in her individual capacity and as Trustee of the QPRT. In addition, Mrs. Hoyt, in her capacity as Trustee, subsequently secured a mortgage on the Edgewater property through Sandy Spring Bank, Inc. on April 26, 2002. Sandy Spring Bank, Inc. is also named as a defendant in the Amended Complaint.

transferred to Mrs. Hoyt on January 21, 1999.  In addition, Mrs. Hoyt sold the Bethesda property on August 24, 2001 for an estimated $740,000.

The United States filed its Complaint on September 5, 2006 seeking the balance of unpaid assessments, along with the interest thereon, in the amount of $417,836.17.  The government also sought a judgment against Mrs. Hoyt for one-half of the proceeds she received from the sale of the Bethesda property.  Neither Mr. Hoyt's transfer of the Edgewater property nor his transfer of $70,000 to his wife were mentioned in the Complaint.

On September 20, 2006, the government filed its Amended Complaint.  The Amended Complaint added Count III, which seeks to void Mr. Hoyt's transfer of the Edgewater property, and Count IV, which seeks to void Mr. Hoyt's transfer of the $70,000 to his wife.

## II.     ANALYSIS

### A.     The Statute of Limitations Governing this Action

The Hoyts contend that the Amended Complaint must be dismissed because the government's claims are time-barred.  First, the Hoyts assert that the Federal Debt Collection Procedures Act (the "FDCPA"), 28 U.S.C. §§ 3304 *et seq*., requires that suits alleging a transfer fraudulent as to a debt to the United States must be brought, at the latest, within six years after the transfer was made.  28 U.S.C. § 3306(b)(2).[3]  Because the debts at issue in this case arose on September 6, 1996, the filing of the Complaint on September 5, 2006 would be untimely under the FDCPA.

---

[3]  The FDCPA also includes a two year statute of limitations that governs certain transfers affecting a debt to the United States.  See 28 U.S.C. §§ 3306(b)(1), 3306(b)(3).

3

While the government does not contest that its claims would be time-barred under the FDCPA, the government asserts that it can prove facts entitling it to relief under Maryland's Uniform Fraudulent Conveyance Act ("MUFCA"). See Md. Comm. Law Code §§ 15-201 *et seq*. Because the United States is not subject to Maryland's statute of limitations for bringing a fraudulent conveyance action under state law, the government contends, the instant lawsuit is governed by the ten-year statute of limitations for collecting federal tax assessments. See 26 U.S.C. § 6502(a).

The government's interpretation of the applicable statute of limitations is correct. Although Maryland law imposes a three-year statute of limitations for fraudulent conveyance claims, see MD. CODE ANN CTS. & JUD. PROC. § 5-101, "[i]t is well settled that the United States is not bound by state statutes of limitation . . . in enforcing its rights." United States v. Summerlin, 310 U.S. 414, 416 (1940). As courts have consistently held, the statute of limitations relevant to the government's fraudulent transfer action against a taxpayer is the ten-year limitation imposed by 26 U.S.C. § 6502(a). See, e.g., United States v. Bacon, 82 F.3d 822, 825 (9th Cir. 1996) ("Because the state statute of limitations for actions under the Conveyance Act does not apply to the federal government, the applicable limitation is the ten-year federal statute of limitations governing tax assessment collection actions.").

The Hoyts argue, however, that even if the ten-year statute of limitations applies to make the original Complaint timely, Counts III and IV were not added to the lawsuit until September 20, 2006 and are thus time-barred. This argument fails. "When . . . a timely suit is brought against the taxpayer . . . the suit tolls the statute of limitations and an action may be brought after that period to foreclose a tax lien on property of a

taxpayer which he has transferred after the imposition of tax lien." United States v. Besase, 319 F.Supp. 1064, 1070 (N.D. Ohio 1970) (holding that amendments seeking to set aside allegedly fraudulent transfers of real property, added to complaint after statute of limitations had expired, were timely). Accordingly, the government's claims are timely filed.

### B. The Government's Ability to Reach Tenants-by-the-Entireties Property

The Hoyts also contend that, to the extent that the government seeks relief under the MUFCA, its claims must be dismissed because property held as tenants-by-the-entireties is beyond the reach of this statute. The Hoyts correctly assert that, as a matter of law, the transfer of entireties property is generally not subject to attack by creditors under Maryland's state fraudulent conveyance statute. See, e.g., Watterson v. Edgerly, 388 A.2d 934, 938 (Md. App. 1978) ("It has long been settled in this State that the property of a husband or wife held as tenants by the entireties cannot be taken by the creditors to satisfy the individual debts of either the husband or the wife.").

This fact does not, however, preclude the government from reaching fraudulently transferred entireties property in order to satisfy a federal tax debt. See United States v. Mitchell, 403 U.S. 190, 204 (1971) ("[E]xempt status under state law does not bind the federal collector[.]"); see also In re Knapp, 285 B.R. 176, 181 (Bankr. M.D.N.C. 2002) ("The enforcement provisions of the Internal Revenue Code grant to the IRS powers to enforce its tax liens which are greater than those possessed by private secured creditors under state law.").

The Supreme Court has held that federal tax liens can attach to tenants-by-the-entireties property. See United States v. Craft, 535 U.S. 274, 288 (2002) (holding that an

"interest in the entireties property constituted 'property' or 'rights to property' for the purposes of the federal tax lien statute"). While Craft did not expressly address the related issue of whether the transfer of entireties property could be considered fraudulent, the Court recognized that its holding would necessarily govern fraudulent conveyance claims involving such property. Id. at 289 ("Since the District Court's judgment [that the transfer was not fraudulent] was based on the notion that, because the federal tax lien could not attach to the property, transferring it could not constitute an attempt to evade the Government creditor, in future cases, the fraudulent conveyance question will no doubt be answered differently.").[4]

Because the government's ability to impose federal tax liens on entireties property would be meaningless if a taxpayer could simply transfer the property beyond the reach of the United States, the government must be entitled to relief if such transfers are shown to be fraudulent.[5] See Popky v. United States, 419 F.3d 242, 244-45 (3d Cir. 2005) (finding that the government was entitled to fifty percent of proceeds from sale of entireties property subject to federal tax lien to satisfy taxpayer's debt for unpaid tax assessments). Accordingly, the Hoyts' motion to dismiss must be denied.

---

[4] The Hoyts contend that, prior to the Supreme Court's ruling in Craft, federal tax liens did not attach to entireties property. At the time Mr. Hoyt transferred the Bethesda and Edgewater properties to his wife, then, he could not have understood these properties to be subject to the federal tax liens attaching to his property. The Hoyts contend that this precludes a finding that these transfers were fraudulent. This issue cannot be resolved at this stage of the proceedings. Because the United States has alleged facts sufficient to meet the pleading standard governing fraudulent conveyance claims, the Hoyts' motion to dismiss must fail.

[5] As the Supreme Court has noted, a contrary approach to entireties property would hinder the government's far-reaching ability to collect on taxpayer debts. Craft, 535 U.S. at 285 (noting that excluding entireties property from that which is subject to federal tax liens would "facilitate[e] abuse of the federal tax system"); see also Drye v. United States, 528 U.S. 49, 56 (1999) (language of federal tax collection statute reveals congressional intent to "reach every interest in property that a taxpayer might have").

## III.    CONCLUSION

For the foregoing reasons, the Court will, by separate Order, deny the Hoyts' Motion to Dismiss. The Court will issue a scheduling order governing future proceedings in this action.

Dated this 25th day of September, 2007.

　　　　　　　　　　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　　　　　　　　　　Benson Everett Legg
　　　　　　　　　　　　　　　　　　　　　　　　　Chief Judge